

**FILED**

NOV - 9 2007

NOV 9 2007

**MICHAEL W. DOBBINS**
**CLERK, U.S. DISTRICT COURT**

# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | |
|---|---|
| <u>Mark A. Padilla</u> ) | |
| ) | |
| ) | |
| ) | |
| ) | CIVIL ACTION |
| (Name of the plaintiff or plaintiffs) ) | |
| ) | **07CV6367** |
| v. ) | **JUDGE DER YEGHIAYAN** |
| ) | **MAG. JUDGE COX** |
| <u>U.S. Justice Department</u> ) | |
| ) | |
| <u>Alberto Gonzalez</u> ) | |
| ) | |
| <u>Attorney General</u> ) | |
| (Name of the defendant or defendants) ) | |

## COMPLAINT OF EMPLOYMENT DISCRIMINATION

1. This is an action for employment discrimination.

2. The plaintiff is <u>Mark A. Padilla</u> of the county of <u>Cook</u> in the state of <u>Illinois</u>.

3. The defendant is <u>Alberto Gonzalez</u>, whose street address is _____,

(city)_____ (county)_____ (state)_____ (ZIP)_____

(Defendant's telephone number) (____) – _____

4. The plaintiff sought employment or was employed by the defendant at (street address)

<u>525 W. Van Buren Street</u> (city) <u>Chicago</u>

(county) <u>Cook</u> (state) <u>IL.</u> (ZIP code) <u>60607</u>

5. The plaintiff [*check one box*]

    (a) ☐      was denied employment by the defendant.

    (b) ☒      was hired and is still employed by the defendant.

    (c) ☐      was employed but is no longer employed by the defendant.

6. The defendant discriminated against the plaintiff on or about, or beginning on or about,

(month)___April_____, (day)___19___, (year)___2007___.

7.1   *(Choose paragraph 7.1 or 7.2, do not complete both.)*

    (a) The defendant is not a federal governmental agency, and the plaintiff  [*check*

    *one box*] ☐ *has not*      filed a charge or charges against the defendant

    ☐ *has*

asserting the acts of discrimination indicated in this complaint with any of the following

government agencies:

    (i)      ☐    the United States Equal Employment Opportunity Commission, on or about

            (month)_____ (day)_____ (year)_____.

    (ii)      ☐    the Illinois Department of Human Rights, on or about

            (month)_____ (day)_____ (year)_____.

    (b) If charges *were* filed with an agency indicated above, a copy of the charge is

attached. ☐ YES.      ☐ NO, **but plaintiff will file a copy of the charge within 14 days**.

It is the policy of both the Equal Employment Opportunity Commission and the Illinois

Department of Human Rights to cross-file with the other agency all charges received.  The

plaintiff has no reason  to believe that this policy was not followed in this case.

7.2      The defendant is a federal governmental agency, and

    (a) the plaintiff previously filed a Complaint of Employment Discrimination with the

    defendant asserting the acts of discrimination indicated in this court complaint.

☒ Yes (month)___June_____ (day)__21__ (year)__2004_____

☐ No, did not file Complaint of Employment Discrimination

(b)    The plaintiff received a Final Agency Decision on (month)__August_____ (day)__11_____ (year)__2007_____ .

(c)    Attached is a copy of the

(i) Complaint of Employment Discrimination,

☒ YES    ☐ NO, but a copy will be filed within 14 days.

(ii) Final Agency Decision

☒ YES    ☐ NO, but a copy will be filed within 14 days.

8.      *(Complete paragraph 8 only if defendant is not a federal governmental agency.)*

(a)☐      the United States Equal Employment Opportunity Commission has not issued a *Notice of Right to Sue.*

(b)☐      the United States Equal Employment Opportunity Commission has issued a *Notice of Right to Sue*, which was received by the plaintiff on (month)_____ (day)_____ (year)_____ a copy of which *Notice* is attached to this complaint.

9.      The defendant discriminated against the plaintiff because of the plaintiff's [*check only those that apply*]:

(a)☐    Age (Age Discrimination Employment Act).

(b)☐    Color (Title VII of the Civil Rights Act of 1964 and 42 U.S.C. §1981).

3

(c) ☐ Disability (Americans with Disabilities Act or Rehabilitation Act)

(d) ☒ National Origin (Title VII of the Civil Rights Act of 1964 and 42 U.S.C. §1981).

(e) ☐ Race (Title VII of the Civil Rights Act of 1964 and 42 U.S.C. §1981).

(f) ☐ Religion (Title VII of the Civil Rights Act of 1964)

(g) ☐ Sex (Title VII of the Civil Rights Act of 1964)

10. If the defendant is a state, county, municipal (city, town or village) or other local governmental agency, plaintiff further alleges discrimination on the basis of race, color, or national origin (42 U.S.C. § 1983).

11. Jurisdiction over the statutory violation alleged is conferred as follows: for Title VII claims by 28 U.S.C.§1331, 28 U.S.C.§1343(a)(3), and 42 U.S.C.§2000e-5(f)(3); for 42 U.S.C.§1981 and §1983 by 42 U.S.C.§1988; for the A.D.E.A. by 42 U.S.C.§12117; for the Rehabilitation Act, 29 U.S.C. § 791.

12. The defendant [*check only those that apply*]

(a) ☐ failed to hire the plaintiff.

(b) ☐ terminated the plaintiff's employment.

(c) ☐ failed to promote the plaintiff.

(d) ☐ failed to reasonably accommodate the plaintiff's religion.

(e) ☐ failed to reasonably accommodate the plaintiff's disabilities.

(f) ☐ failed to stop harassment;

(g) ☒ retaliated against the plaintiff because the plaintiff did something to assert rights protected by the laws identified in paragraphs 9 and 10 above;

(h) ☐ other (specify):_____

_____

_____

_____

_____

_____

13.    The facts supporting the plaintiff's claim of discrimination are as follows:

   Plantiff filed an EEO complaint of Discrimination/National Origin

   (Mexican). After filing the EEO complaint received an udesireable

   transfer and position.

   _____

   _____

   _____

14.    *[AGE DISCRIMINATION ONLY]*  Defendant knowingly, intentionally, and willfully
       discriminated against the plaintiff.

15.    The plaintiff demands that the case be tried by a jury.  [X] YES    [ ] NO

16.    THEREFORE, the plaintiff asks that the court grant the following relief to the plaintiff
       [*check only those that apply*]

   (a) [ ]    Direct the defendant to hire the plaintiff.

   (b) [ ]    Direct the defendant to re-employ the plaintiff.

   (c) [ ]    Direct the defendant to promote the plaintiff.

   (d) [ ]    Direct the defendant to reasonably accommodate the plaintiff's religion.

   (e) [ ]    Direct the defendant to reasonably accommodate the plaintiff's disabilities.

   (f) [ ]    Direct the defendant to (specify): _____

_____

_____

_____

_____

_____

(g) [X]    If available, grant the plaintiff appropriate injunctive relief, lost wages, liquidated/double damages, front pay, compensatory damages, punitive damages, prejudgment interest, post-judgment interest, and costs, including reasonable attorney fees and expert witness fees.

(h) [ ]    Grant such other relief as the Court may find appropriate.

(Plaintiff's signature)

_____

(Plaintiff's name)

_____Mark A. Padilla_____

(Plaintiff's street address)

_____4209 N. Yale Avenue_____

_____

(City)___Arlington Heights__(State)___IL_____ (ZIP)_60004_

(Plaintiff's telephone number)  (_847_) – _392-8509_____

Date: ____11-09-07____

6

**U.S. Department of Justice**

Complaint Adjudication Office

Agency Complaint Number E-04-0041
DJ Number 187-9-28

---

*950 Pennsylvania Avenue, NW*
*Patrick Henry Building, Suite 5300*
*Washington, DC 20530*

JUN 2 6 2007

### DEPARTMENT OF JUSTICE FINAL DECISION

in the matter of

### <u>Mark A. Padilla v. Bureau of Alcohol, Tobacco, Firearms and Explosives</u>

On June 21, 2004, complainant Mark A. Padilla filed a complaint of employment discrimination complaint against the Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF), pursuant to Section 717 of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §2000e-16, and 29 C.F.R. §1614.101(b). He alleged discrimination on the bases of national origin (Hispanic), and reprisal. The ATF accepted the following issue for investigation:

> Whether you were subjected to discrimination because of your national origin (Hispanic) and retaliated against for participating in a prior EEO Complaint (TD-03-3033, dated August 22, 2002), when:

> 1. On April 19, 2004, you were assigned to a new group and told that you are no longer to serve a collateral duty assignment as Coordinator of the National Integrated Ballistics Information Network (NIBIN).

As relief, complainant seeks reassignment to the former position.

#### Facts

Complainant is employed as a Special Agent with the Bureau of Alcohol, Tobacco and Firearms (ATF) in Chicago, Illinois (Ex. F2, p. 022). Prior to April 19, 2004, complainant was assigned to Chicago V (Intelligence Group), and was later moved to Chicago IV (Ex. F16, p. 085). According to complainant, Chicago V "works specifically in intelligence" wherein Chicago IV is "a street level operation" (<u>ibid.</u>). Complainant explained that in Chicago IV "you are building cases and arresting people" while in Chicago V "you are out developing intelligence" (<u>ibid.</u>) Complainant said "there is no difference in importance of the work done between the two units" (<u>ibid.</u>). Complainant's first level supervisor in

-2-

Group IV is Michael Casey and complainant's second level supervisor is Assistant Special Agent in Charge (ASAC) Stephen Martin (ibid.).

Complainant filed an EEO complaint on September 27, 2002, alleging racial discrimination. The complaint was dismissed because it was not filed within 45 days of the discriminatory act (Ex. F2, pp. 022,026; Ex. F16, p. 085). Complainant explained in the 2002 complaint that Division Operations Officer Michael Brostowicz did not include all of the work complainant performed in complainant's evaluation (Id. at 085-086). Complainant stated that he told Special Agent in Charge (SAC) Larry Ford "if I can't be given credit for all I do here, then I want to relinquish all my collateral duties which included the National Integrated Ballistics Information Network (NIBIN) position" (Id. at 086). Complainant said Ford stated that the evaluation could not be amended because complainant's supervisor was on extended leave (ibid.). According to complainant, Ford said "stick with me through the NIBIN rollout, and I will take care of you" (ibid.).

Complainant claimed that an ATF contractor contacted complainant on April 15, 2004, and said complainant was being transferred from Chicago V to Chicago IV (Ex. B, p. 011). According to complainant, the contractor said complainant would no longer be the NIBIN Coordinator (ibid.). On April 19, 2004, complainant said Special Agent Patti Gibbon told him that Acting Group Supervisor for Chicago IV Tina Sherrow said complainant had been transferred, and that Gibbon had been assigned the position of NIBIN Coordinator (ibid.). Complainant said Gibbon indicated that Sherrow was told by ASAC Glenn Anderson that the "transfer order came direct from ASAC Larry Ford" (ibid.).

Complainant went to Sherrow's office on April 19, 2004, and Sherrow told complainant that he had been officially transferred to Chicago IV (ibid., Ex. F16, p. 086). Complainant said Sherrow indicated that "she was told by ASAC Anderson" (Ex. FB, p. 011). Sherrow said she "strongly advised Anderson against the transfer or relief of NIBIN duties" (ibid.). Complainant said the new Intelligence Supervisor Kevin McCann was present in Sherrow's office when complainant met with Sherrow (ibid., Ex. F16, p. 087). According to complainant, McCann stated that "he advised against the relief of NIBIN duties because of the importance of experience in that area" (Ex. FB, p. 011). According to complainant, Sherrow and McCann requested Anderson "to reconsider the transfer," but their request was denied (ibid.).

Complainant met with Anderson and was told that complainant had been transferred to Group IV Supervisor Mike Casey's group

-3-

(<u>Id</u>. at 012). Complainant asked Anderson "if I would still be the NIBIN Coordinator," and Anderson replied "that the position has been given to SA Gibbons" (<u>ibid.</u>). Complainant said he opposed the transfer because of several scheduled NIBIN events and the "overall good of the NIBIN program" (<u>ibid.</u>). Complainant asked Anderson to reconsider the NIBIN transfer, and Anderson said "no," and that Sherrow "fully supported the move" (<u>ibid.</u>).

Complainant said Anderson stated that the transfer was a "management decision" and that complainant was being transferred because "Casey's group needed additional manpower" (<u>ibid.</u>; Ex. F16, p. 089). According to complainant, Casey said to Anderson that he [Casey] needed agents (Ex. F16, p. 089). Complainant said, "I thought this was unusual. This was one of the two highest staffed groups in Chicago" (<u>ibid.</u>).

Complainant said he told Anderson that complainant "had an EEO complaint that indirectly involved Mike Casey" (Ex. FB, p. 012). According to complainant, Anderson said he did not know anything about the EEO complaint (<u>ibid.</u>). Complainant said Anderson indicated that Casey "had no problem with the transfer," and that Anderson made the decision to transfer complainant (<u>ibid.</u>). Complainant asked Anderson, "if he was going to make me go there, given that Mr. Casey was the start of my EEO complaint. He told me that that was the way it was, and if it was my negative attitude that was going to color things, I would be the one making the problem" (Ex. F16, pp. 089-090).

Complainant said he asked Casey "do you know why I was transferred to your group?" (Ex. FB, p. 012). Complainant said Casey responded "no," and stated that he was surprised when Anderson told him about the transfer (<u>ibid.</u>). According to complainant, Casey said Anderson stated that "the transfer came direct from the SAC," but complainant said Casey had not requested additional manpower (<u>ibid.</u>). Complainant said he saw SAC Ford on April 21, 2004, and Ford said, "Hey, I forgot all about that Casey thing, maybe you should revisit this with Andy" (<u>Id.</u> at 013). Complainant responded, "I'm there now so I'll work it out myself" (<u>ibid.</u>).

Complainant said the NIBIN Coordinator is "a position that is undesirable to most. I did very well with the program.... I was one of the most knowledgeable Coordinators in the country" (Ex. F2, pp. 027-028). Complainant testified that he wanted to become an expert in the NIBIN field (<u>Id.</u> at 028). Complainant said he "told ATF management...that I had problems with Casey, Brostowitz and Sherrow" (<u>Id.</u> at 028). Complainant said he has been transferred and assigned to work with Casey and work under

-4-

Brostowitz's supervision who "undervalued my work in my evaluation to purposely hold me back, to working for Sherrow, who became my Acting Supervisor with no experience in this area at all" (ibid.). Complainant said "there was no good reason for this reassignment other than to hold me back in an area that I was becoming an expert" (ibid.). According to complainant "my work in this field could have eventually led to a Grade 14 full time position with NIBIN Coordinator duties" (ibid.).

Complainant said Ford retaliated against complainant "by transferring me from a position he knew I was doing well at and happy to work" (ibid.). Complainant said he would not have filed the prior EEO complaint "had SAC Ford required Brostowitz to amend my evaluation" (ibid.). Complainant explained that "Casey was the root of my racial discrimination complaint," and "had SAC Ford transferred me to any other group but SA Casey's I would not have filed a complaint of retaliation" (ibid.).

Complainant claimed that Ford retaliated against complainant for filing the prior EEO complaint (Ex. F2, p. 022). Complainant said Ford "transferred me from a position he knew I was excelling" because of the EEO complaint and to a supervisor "where he knew was a part of my EEO complaint" (Ex. FB, p. 013). Complainant said "this is retaliation because I had previously filed an EEO complaint based on national origin (Hispanic)" (ibid.). Complainant said the "timing of the decision on my reassignment" was coordinated with Ford's last day on the job (Ex. F16, p. 092). According to complainant, Ford "called the shots" (ibid.). Complainant said Ford "did not like the fact that I had complained and challenged his leadership" (Id. at 093).

Complainant said "Ford and Anderson never made any derogatory comments about me as being Hispanic or Mexican. I am looking at this more as reprisal for filing that initial complaint against Mr. Brostowicz" (Id. at 094).

Deputy Assistant Director Larry Ford was complainant's third level supervisor when Ford was Special Agent in Charge, Chicago Field Division (Ex. F3, p. 042). Ford said he was advised that complainant had filed an EEO complaint in September or October 2002 (ibid.). Ford said he never told complainant that "I would take care of him," and he did not promise complainant any award for remaining the NIBIN Coordinator or Acting Senior Operations (Id. at 043). Ford said, "I don't make a practice of promising people awards. My suggestion to him would have been that I don't reach down through the chain of command to give awards. If his supervisor recommends him for an award, the ASAC his second level

-5-

supervisor has the authority to approve it" (ibid.).

Ford stated that he did not make the decision to reassign complainant and to give complainant's NIBIN collateral duties to someone else (ibid.). According to Ford, ASAC Andy Anderson would have made the decision to reassign complainant, and Ford said he "would have been in agreement" (Id. at 044). Ford said he did not reassign complainant to the Chicago IV Group, and complainant's statements that "I did not support him in his role as NIBIN Coordinator, and I took away those collateral duties as a parting shot to get back at him are inaccurate" (ibid.). Ford stated that he had not received a complaint indicating that Group Supervisor Michael Casey made derogatory comments about minorities (ibid.). Ford stated that he became aware of complainant's national origin when complainant filed the EEO complaint in 2002 (ibid.). Ford stated that he did not take any action against complainant in reprisal for filing the prior EEO complaint (ibid.).

Assistant Special Agent in Charge Glenn Anderson was complainant's second level supervisor when complainant was assigned to Chicago V (Ex. F4, p. 047). Anderson said he discussed the reassignment with complainant on April 19, 2004, and the effective date for the change was May 2, 2004 (ibid.). Anderson stated that it was his recommendation to transfer complainant to Chicago IV (Id. at 048).

Anderson explained that the NIBIN Coordinator was not a full-time position, so he discussed with ASAC Stephen Martin and Acting Supervisor Tina Sherrow the reassignment of the NIBIN Coordinator duties to the Intelligence Officer (ibid.). Anderson said that during the past year, "we worked to realign the groups within the Field Division," and changed the mission of some groups and combined the mission of some groups" (ibid.). Anderson said office resources were realigned because of retirement and other assignments, and additional resources were needed in Chicago Group IV (ibid.; Ex. F13, p. 076). According to Anderson, Chicago IV group was an arson group, but "the mission was changed to target gang violence on the North side of Chicago" (Ex. F4, p. 049). Anderson stated that the "change in the focus of the Chicago IV group was made in 2003" (ibid.). Anderson said ASAC Martin agreed with the decision to transfer complainant and Ford agreed with realigning personnel and changing duties (Id. at 048-049).

Anderson said "the driving force in making this move [reassignment] was that Mr. Padilla was the NIBIN Coordinator for the Chicago Field Division" (Id. at 049). According to Anderson, the NIBIN position was a collateral assignment that had been treated as a full time position, but the NIBIN Coordinator did not

-6-

need to be a full time position (ibid.). Anderson testified that
Chicago IV was doing "more intensive field work" and "needed more
senior investigators" (ibid.). Anderson explained that
complainant was from Chicago, had "senior level experience," and
could assist immediately with the investigation (ibid. ).
Anderson said, "I don't think there were any other employees who
were being reassigned although we have made numerous changes over
the last year and a half and have made changes since SA Padilla's
reassignment" (ibid.). Anderson stated that he did not recall
"anyone else being moved at exactly the same time as" complainant,
but "two or three weeks ago we moved another SA into Chicago IV"
(ibid.). Anderson said complainant "was doing a decent job at the
time of his reassignment. I would not say that he excelled"
(ibid.). According to Anderson, complainant's function in the
INTEL group was as NIBIN Coordinator (ibid.). Anderson said
complainant was not moved because complainant did something wrong
(ibid.).

Anderson said the NIBIN duties were reassigned to the
Intelligence Officer (Id. at 050). Anderson said Serrow agreed
that the NIBIN Coordinator was not a job that required a full time
position, and agreed with Anderson's decision to move complainant
out of the INTEL group (ibid.). Anderson said he spoke with Casey
prior to making the reassignment and Casey said, "Good, I can use
the assistance" (ibid.). According to Anderson, Casey "never
mentioned any past history" with complainant, and Ford never
mentioned "any history or conflict" between Casey and complainant
(ibid.).

Anderson said he had intended to meet with complainant to
discuss the reassignment, but complainant was on vacation (Id. at
051). Anderson said he met with complainant on April 19, 2004,
concerning the reassignment, and the discussion got "very heated"
(ibid.). According to Anderson, complainant thought that Anderson
moved complainant because complainant "had not done a good job"
(ibid.). Anderson explained that "it was nothing negative, it was
a matter of moving him to Chicago IV because we needed more
assistance with the investigative work" (ibid.). Anderson said
that it was during this conversation that complainant told
Anderson that complainant had filed an EEO complaint against Casey
(ibid.). According to Anderson, complainant said Casey had made
derogatory comments about Hispanics (ibid.). Anderson stated that
Casey never made any negative comments about complainant moving to
Casey's group (ibid.). Anderson said Casey wanted "another body
in his group" (ibid.). Anderson said to complainant, "Mr. Casey
did not seem to be going into the reassignment from a negative
perspective. I told Agent Padilla that he appeared to be going
into the reassignment from a negative perspective" (ibid.).

-7-

Anderson said he had never heard that Casey had made derogatory comments until April 19, 2004 (Id. at 052). Anderson said complainant never said that complainant did not want to work under Casey (ibid.). Anderson said he did not take any action to discriminate against complainant on the bases of race, national origin, or reprisal (ibid.).

Assistant Special Agent in Charge Stephen Martin is complainant's second level supervisor (Ex. F6, p. 058). Martin said he discussed with Anderson "how to move people back into groups to do more of the actual work" prior to complainant's reassignment (Id. at 059). Martin said Casey's group had an investigation related to gang activity, and it was considering doing a wiretap on Group IV, which placed a higher demand for surveillance manpower on the unit (ibid.). According to Martin, an agent was leaving Downer's Grove, another agent was going to officer training at FLETC, and an agent was going to be assigned to the St. Paul Division (ibid.). Martin said Casey's group had a need for additional manpower (ibid.). Martin said the Intelligence Group "was a support function rather than a case-generating group" (ibid.). Martin explained that complainant "could be best used somewhere else" based on the demands on the agents in the group, and complainant's collateral duty assignment (Id. at 059-060).

Martin said he did not know that complainant would be placed in Casey's group when Martin returned to work on April 15, 2004 (Id. at 060). Martin said he learned that complainant had filed a prior EEO complaint on April 19, 2004, the day Martin met with complainant and ASAC Anderson (Id. at 058). Martin said he asked Casey "if he had an EEO complaint involving Mr. Padilla?" (Id. at 060). According to Martin, Casey said "he had never heard about it" (ibid.). Martin said Ford was in agreement with the recommendation to move complainant (ibid.). Martin said he has never received any information about Casey making derogatory statements about minorities or different ethnic groups (Id. at 061).

Martin stated that he did not know complainant's national origin, and that complainant was chosen to conduct new hire interviews (ibid.). Martin said he took no action against complainant based on complainant's race, national origin, or prior EEO activity (ibid.).

Group Supervisor Michael Casey is complainant's first level supervisor (Ex. F5, p. 055). Casey said he was not consulted prior to complainant's reassignment to Chicago Group IV (ibid.). According to Casey, ASAC Anderson told him that complainant was

-8-

being transferred to Casey's group (<u>Id</u>. at 056). Casey said he
did not discuss the assignment and said to Anderson, "good I could
use the help" (<u>ibid</u>.). Casey explained that another agent was
being transferred to Wisconsin at the time complainant was
transferred into Group IV (<u>ibid.</u>). Casey said he knew complainant
and assisted complainant in getting hired at ATF (<u>ibid</u>.). Casey
said he thought complainant "would be a good addition to the
group" (<u>ibid.</u>). Casey said complainant never confronted him about
making derogatory comments about complainant's race or national
origin (<u>ibid</u>.). Casey said he and complainant have never had an
issue, and complainant has never threatened to file a grievance
against Casey (<u>Id</u>. at 057). Casey said he did not know that
complainant had worked for Brostowicz and did not do anything to
influence Brostowicz to treat complainant "badly" (<u>ibid.</u>).
Complainant said complainant "would be a productive agent that
could help with our workload" (<u>ibid.</u>)

Group Supervisor Kevin McCann is the Group Supervisor of
Chicago Group V (Ex. F7, p. 063). McCann said the decision to
transfer complainant from Group V to Group IV was made prior to
his arrival as Group Supervisor Group V on April 19, 2004 (<u>ibid.</u>).
McCann said he had a discussion with Anderson when he learned of
complainant's transfer, and requested that complainant remain in
Group V (<u>ibid</u>.). According to McCann, Anderson said "the change
would be made anyway, based on an allocation of resources within
the Field Division" (<u>ibid</u>.).

Acting Group Supervisor for Chicago V Tina Sherrow was
detailed to that position in April 2004 and was complainant's
first level supervisor (Ex. F8, p. 066). Sherrow said she met
with Anderson and discussed complainant's reassignment prior to
April 19, 2004 (<u>ibid</u>.). Sherrow said complainant was good at the
NIBIN Coordinator job, and "I did not think those duties should be
reassigned" (<u>ibid</u>.). Sherrow said she agreed with Anderson that
complainant should have duties in addition to the NIBIN
Coordinator duties (<u>Id</u>. at 066-067). According to Sherrow, "there
were different assignments in the INTEL Group that needed more
attention," and complainant could take on additional
responsibilities (<u>ibid</u>.). Sherrow said "if the NIBIN
responsibilities were reassigned to Patti then Mark would no
longer have a substantive function within the INTEL group" (<u>Id</u>. at
067). According to Sherrow, once the NIBIN duties were
reassigned, the Division could reassign complainant to the Chicago
IV "where they needed more agents actively investigating cases"
(<u>ibid</u>.). Sherrow said she respected Anderson's decision to
reassign complainant, and asked Anderson "if he would consider
waiting until the new supervisor came to make the personnel
changes" (<u>ibid</u>.). Sherrow said the new supervisor "should be

-9-

given an opportunity to evaluate and assess the personnel in his group" (ibid.).

Regional Coordinator Mark Rusin is the Coordinator for the NIBIN program (Ex. F9, p. 070).  According to Rusin, the Field Division assigned the collateral duties (ibid.).  Rusin stated that he was not informed about complainant's reassignment prior to April 19, 2004 (ibid.).

## Analysis

Complainant alleged that he was discriminated against on the basis of national origin and in reprisal for prior EEO activity when he was reassigned to the a new group and was removed from his collateral duty assignment.  Section 717 of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §2000e-16, prohibits a federal employer from discriminating against an employee on the basis of national origin.  29 C.F.R. §1614.101 (b) prohibits retaliation by a federal employer against an employee who has brought a charge under Title VII.

The traditional analysis for evaluating a discrimination claim is found in McDonnell Douglas v. Green, 411 U.S. 792 (1973).  Although the framework varies depending on the type of employment decision at issue, the record must demonstrate that complainant belongs to a protected group, and was treated differently from similarly situated persons under circumstances that raise an inference of discrimination.

Complainant will prevail if the preponderance of the evidence demonstrates that the non-discriminatory reason(s) proffered by ATF for its actions are not credible, and that management was actually motivated to action by the employee's protected trait or activity.  See St. Mary's Honor Center v. Hicks, 509 U.S. 502, 519-25 (1993).  The ultimate issue to be resolved is whether the record establishes that management intentionally discriminated against complainant on the basis of national origin.

Complainant alleged that he was reassigned from Chicago Group V to Chicago Group IV effective April 19, 2004, and his duties were removed as National Integrated Ballistics Information Network (NIBIN) Coordinator.  Complainant provided no evidence and the record contained no evidence that complainant's reassignment and removal of duties were based on complainant's national origin.

ATF management officials articulated legitimate, non-discriminatory reasons for reassigning complainant and removing his NIBIN duties.  Assistant Special Agent in Charge Glenn

-10-

Anderson testified that management realigned groups within the
Field Division by changing and consolidating group missions.
Anderson explained that office resources were realigned because of
retirements and other assignments, and additional resources were
needed in Chicago Group IV.  The record establishes that Chicago
IV was an arson group, but the mission and focus was changed in
2003 to target violence on the North Side of Chicago.  The
evidence reveals that Chicago Group IV had an investigation
related to gang activity, and management was considering doing a
wiretap which placed a "higher demand for surveillance people and
people to work the wire" (Ex. F6, p. 059).  Anderson testified
that Chicago IV "needed more senior investigators" because the
Group was doing "more intensive field work" (ibid.).  Anderson
reassigned complainant because complainant had "senior level
experience," and could assist immediately with the investigations.

Anderson explained that "the driving force in making this
move [reassignment] was that Mr. Padilla was the NIBIN Coordinator
for the Chicago Field Division" (Ex. F4, p. 049).  Anderson
explained that the NIBIN Coordinator position was a collateral
assignment that had been treated as a full time position, but the
position did not need to be a full time position.  Assistant
Special Agent in Charge Stephen Martin explained that complainant
"could be best used somewhere else" since complainant's duty as
NIBIN Coordinator position was a collateral assignment.  Acting
Group Supervisor Tina Sherrow indicated that complainant's NIBIN
duties were his primary assignment, and "if the NIBIN
responsibilities were reassigned ... the Division could reassign
Mark to Chicago IV where they needed more agents actively
investigating cases" (Ex. F8, p. 067).

The evidence establishes that additional resources were
needed in Chicago IV based on the demands on the agents in the
office.  The evidence shows that management officials agreed to
the reassignment and removal of NIBIN Coordinator duties (Ex. F3,
pp. 044, 048).  There is no evidence that any factors other than
complainant's experience as a Special Agent were considered
in management's decision to reassign complainant or remove his
collateral NIBIN Coordinator duties.  ATF articulated a
legitimate, nondiscriminatory reason for reassigning complainant
and removing complainant's NIBIN Coordinator duties.

Complainant contended that management's reasons were pretext
for discrimination.  Complainant said the reassignment was
"unusual" because "this was one of the two highest staffed groups
in Chicago" (Ex. F 16, p. 089).  With regard to the NIBIN program,
complainant claimed that he had "more expertise than anyone in
Chicago, and maybe in the country" (Id. at 087).  Complainant said

-11-

there "are people from outside of Intelligence in other areas of
the country who do this work", and that "Ford cut me off at the
knees from pursuing the opportunity for a GS-14 NIBIN Regional
Coordinator position" (Id. at 094).

     The evidence establishes that complainant was reassigned to
Chicago IV based on the need for additional agents in Chicago
Group IV, complainant's "senior level experience" and a
realignment of resources.  The evidence also demonstrates that
complainant was not the only agent reassigned to Chicago Group IV.
According to Anderson, "two or three weeks ago we moved another SA
into Chicago IV" (Ex. F4, p. 049).  As to the NIBIN duties, the
evidence establishes that complainant's function within the INTEL
group was as NIBIN Coordinator," and the NIBIN duties were
reassigned to the Intelligence Officer.  Complainant may have
excelled in his duties as NIBIN Coordinator, but the evidence
reveals that management believed that complainant's experience
could be better utilized in the Chicago Group IV.  There is no
evidence that ATF's explanation was pretext for discrimination.

     Complainant alleged that he was retaliated against for prior
EEO activity when he was reassigned and his duties were removed as
NIBIN Coordinator.  Complainant claimed that Deputy Assistant
Director Larry Ford retaliated against complainant because
complainant filed the prior EEO complaint.  In order to establish
a prima facie case of discrimination based upon reprisal, the
record must establish that: (1) complainant was engaged in an
activity protected under Title VII of the Civil Rights Act of
1964, as amended, (2) management was aware of the complainant's
protected activity, (3) that the employer took adverse employment
action against complainant, and (4) a nexus exists between the
time complainant engaged in protected activity and the adverse
action so that a retaliatory motive can be inferred.  Ruth
Williams v. Small Business Administration, EEOC #0197585 (January
30, 2002), Brown v. Brody, 199 F.3d 446, 452-53 (D.C. Cir. 1999).

     The record indicates that complainant filed a complaint on
September 27, 2002.  The record establishes that the complaint was
denied because it was not filed within 45 days of the
discriminatory act.  Complainant has established that he engaged
in prior EEO activity.

     Complainant claimed that the prior complaint was filed
against Group Supervisor Michael Casey and Division Operations
Officer Michael Brostowitz.[1]  Casey testified that he did not know

---

[1] The record contained no affidavit for Brostowitz.

-12-

about complainant's prior EEO activity and stated complainant
"never threatened to file a grievance against me."    Complainant
claimed that Deputy Assistant Director Larry Ford "took a reprisal
against me for filing the prior complaint,"
but Ford testified that he was not involved in the decision to
reassign or remove complainant's duties.

The record does not establish that the management official
making the decision to reassign or remove complainant's collateral
NIBIN duties was aware of the complainant's prior protected
activity.    The evidence establishes that Assistant Special Agent
in Charge Glenn Anderson made the decision to reassign complainant
and remove complainant's collateral duties, but Anderson was not
involved or aware of complainant's prior EEO activity.    Anderson
testified that he became aware of complainant's 2002 EEO
complainant on April 19, 2004, while discussing with complainant
the reassignment to Chicago Group IV.    There can be no prima facie
case of retaliation where a complainant cannot demonstrate that
the official knew of complainant's EEO activity.    To retaliate,
relevant agency officials must be aware of protected activity.
Jefferson v. Department of Justice, EEOC #01A23759 (August 4,
2003)(one of complainant's supervisor's knowledge of meeting
between complainant and EEO personnel could not be imputed to all
acting officials).    Complainant has failed to establish that
relevant management officials were aware of his prior protected
activity when complainant was reassigned.

Even assuming that complainant has established the first two
elements, the record must establish that complainant suffered an
adverse employment action.    An adverse employment action is a
"materially adverse change in terms or conditions of . . .
employment because of [the] employer's conduct."    Policastro v.
Northwest Airlines, Inc., 297 F.3d 535, 539 (6th Cir. 2002).    An
adverse action has been defined as "significant change in
employment status, such as hiring, firing, failure to promote,
reassignment with significantly different responsibilities, or a
decision causing a significant change in benefits." Burlington
Indus., Inc. v. Ellerth, 524 U.S. 742, 761 (1998).    A purely
lateral transfer, that is, a transfer that does not involve a
demotion in form or substance, cannot rise to the level of a
materially adverse employment action.    Williams v. Bristol-Myers
Squibb Co., 85 F.3d 270, 274 (7th Cir. 1996).    Federal courts have
recognized that there is a "clear trend of authority" that lateral
transfers are not adverse actions.    Burger v. Central Apartment
Management, 168 F.3d 875, 879 (5th Cir. 1999).    Here, the record
establishes that complainant's reassignment was a lateral
transfer, with no change in pay, benefits or material
consequences.    The reassignment and removal of collateral duties

-13-

were not "adverse employment actions." Complainant was reassigned from Chicago Group V, a "support function" group to Chicago Group IV, a "case generating group." The evidence indicates that the reassignment involved similar functions, and complainant testified "there is no difference in importance of the work done between the two units" (Ex. F16, p. 085). The record indicates that complainant was reassigned based on a reallocation of resources caused by retirement and reorganization of the office's missions, and the need to provide "senior level experience" to Chicago IV. There is no evidence that complainant was disadvantaged because of the reassignment. As to complainant's removal of NIBIN duties and claim that he had "more expertise than anyone in Chicago, and maybe in the country," "a bruised ego" is not an employment action adverse. Flaherty v. Gas Research Institute, 31 F.3d 451, 457 (7th Cir. 1994). Complainant has failed to show that he suffered an adverse action sufficient to invoke Title VII.

Even assuming complainant established that he suffered an adverse action, the fourth element of a prima facie case requires that the record demonstrate a causal connection between complainant's protected activity and the adverse employment action. A causal connection between the protected activity and the adverse action can be demonstrated by showing that the adverse employment action followed the protected activity within such a period of time that a reprisal motive is inferred. Here, the evidence establishes that complainant filed the EEO complaint during September 2002, and the alleged adverse action did not occurred until April 19, 2004. Complainant's reassignment and removal of collateral duties did not occur until two years after complainant filed the 2002 complaint. The record establishes that the proximity in time between complainant's protected activity and the alleged adverse action is not sufficiently close to infer causation. The EEOC has held that a nexus may be established if events occurred within one year of each other. Patton v. Department of Navy, EEOC #05950124 (June 27, 1996). Battaglia v. F.D.I.C., EEOC #01985358 (July 30, 2001)(finding no causal connection where the alleged retaliatory act occurred two years after initial EEO activity, and where neither of the alleged retaliating officials were involved in the initial EEO complaint). The record demonstrates that complainant failed to establish a causal connection between the reassignment and removal of collateral duties and his protected activity.

-14-

Even assuming the record establishes a prima facie case of retaliation, ATF officials offered a legitimate explanation for its actions.  Where the employer offered a legitimate reason for its actions, the record must show that the reason was pretext for discrimination.  The record establishes that ATF officials provided a legitimate, non-discriminatory reason for reassigning complainant to Chicago Group IV, and removing complainant's collateral duties.  The record does not support an inference of retaliatory motive on the part of ATF officials.  The record establishes that complainant has failed to establish a prima facie case of reprisal.

### Decision

For the reasons stated, the evidence does not support complainant's claim that ATF officials discriminated against him on the bases of national origin and reprisal.


_____
Mark L. Gross
Complaint Adjudication Officer


_____
LeVern M. Younger
Attorney
Complaint Adjudication Office

EXHIBIT A1

**U.S. Department of Justice**

## Complaint of Discrimination
*(See instructions on reverse)*

PRIVACY ACT STATEMENT: 1. AUTHORITY- The authority to collect this information is derived from 42 U.S.C. Section 2000e-16; 29 CFR Sections 1614.106 and 1614.108. 2. PURPOSE AND USE-This information will be used to document the issues and allegations of a complaint of discrimination based on race, color, sex (including sexual harassment), religion, national origin, age, disability (physical or mental), sexual orientation or reprisal.

The signed statement will serve as the record necessary to initiate an investigation and will become part of the complaint file during the investigation; hearing, if any; adjudication; and appeal, if one, to the Equal Employment Opportunity Commission. 3. EFFECTS OF NON-DISCLOSURE-Submission of this information is MANDATORY. Failure to furnish this information will result in the complaint being returned without action.

1. Complainant's Full Name
MARK A. PADILLA

Street Address, RD Number, or Post Office Box Number
4209 N. YALE AVE.

City, State and Zip Code
ARLINGTON HTS., IL. 60004

2. Your Telephone Number (including area code)
Home  847  392-8509
Work  312  537-4911

3. Which Department of Justice Office Do You Believe Discriminated Against You?
BUREAU OF ALCOHOL, TOBACCO AND FIREARMS

A. Street Address of Office
B. 525 W. VAN BUREN

C. City, State and Zip Code
CHICAGO, IL. 60607

4. Current Work Address
525 W. VAN BUREN
CHICAGO, IL. 60607

A. Name of Agency Where You Work
ATF

B. Street Address of Your Agency
SAME

C. City, State and Zip Code
SAME

D. Title and Grade of Your Job
SPECIAL AGENT  GS 1811-13

5. Date on Which Most Recent Alleged Discrimination Took Place

| Month | Day | Year |
|-------|-----|------|
| 04 | 19 | 04 |

6. Check Below Why You Believe You Were Discriminated Against?

- [ ] Race or Color (Give Race or Color) _____
- [ ] Religion (Give Religion) _____
- [ ] Sex (Give Sex)  [ ] Male  [ ] Female
  - [ ] Sexual Harassment
- [ ] Age (Give age) _____
- [x] National Origin (Give National Origin) HISPANIC
- [ ] Disability  [ ] Physical  [ ] Mental

- [ ] Sexual Orientation
- [x] Reprisal
- [ ] Parental Status
- [ ] Class Complaint

7. Explain How You Believe You Were Discriminated Against *(treated differently from other employees or applicants)* Because of Your Race, Color, Sex (including sexual harassment), Religion, National Origin, Age, Disability (physical or mental), Sexual Orientation, Parental Status, or Reprisal. Do not include specific issues or incidents that you have not discussed with your EEO Counselor. *(You may continue your answer on another sheet of paper if you need more space.)*

BECAUSE OF MY HISPANIC ORIGIN I WAS DISCRIMINATED AGAINST, AFTER FILING AN EEO COMPLAINT I WAS SUBSEQUENTLY TRANSFERED FROM MY POSITION IN RETALIATION.

8. What Corrective Action Do You Want Taken on Your Complaint?

DISCRIMINATION AND RETALIATION TO STOP. ABILITY TO WORK AT PREVIOUS POSITION.

9. A) I have discussed my complaint with an Equal Employment Opportunity Counselor and/or other EEO Official.

DATE OF FIRST CONTACT WITH EEO OFFICE:
05 25 04

DATE OF RECEIPT OF NOTICE OF FINAL INTERVIEW WITH EEO COUNSELOR:
06 09 2004

B) Name of Counselor
JUDY HASH

- [ ] I Have Not Contacted an EEO Counselor

10. Date of This Complaint:

| Month | Day | Year |
|-------|-----|------|
| 06 | 21 | 04 |

11. Sign Your Name Here:
*Mark A. Padilla*

FORM DOJ-201A
MAR. 2001

00 001

# EEO Counseling Report – Individual Complaint – Part 1

| EEO Officer: | EEO Counselor: |
|---|---|
| Anthony Torres<br>Executive Assistant<br>650 Mass. Ave. N.W.<br>Washington, D.C. 20226<br>202-927-8154<br>FAX 202-927-8835 | Judy Hash<br>EEO Specialist/Counselor<br>525 W. Van Buren St., Suite 600<br>Chicago, IL 60607<br>312 846-7293  Fax 312 846-7291 |

## A. Aggrieved Person:

Name: **Mark A. Padilla**
Title/Series/Grade: **Special Agent, GS1854-13**
Place of Employment: **Chicago Field Division**
Work Phone Number: **312 846-8940**
Home Phone Number: **847 392-8509**
Cell Phone: **312 735-4711**
Home Fax Number:
Home Address: **4209 N. Yale Ave., Arlington Hts, IL 60004**

## B. Counseling Chronology:

**Date of Initial Contact:**

05/25/04

**Date of Initial Interview:**

06/01/04

**Date of Alleged Discriminatory Event:**

04/19/04

**Reason for delayed contact beyond 45 days, if applicable:**

**Date counseling report submitted to EO manager:**

06/10/04

**Date Admin File Forwarded to HQ:**

06/10/04

## C. Basis(es) for Alleged Discrimination:

1) ☐ Race (Specify)

2) ☐ Color (Specify)

3) ☐ National Origin (Specify)

4) ☐ Sex (Specify)

5) ☐ Age  (Date of Birth) _____

6) ☐ Mental Disability (Specify)

7) ☐ Physical Disability (Specify)

8) ☐ Religion (Specify)

9) ☒ Reprisal /Retaliation **(identify earlier event and/or opposed practice, and <u>DATE</u>)**   TD#03-3033, 08/22/02

10) ☐ Genetic Information

11) ☐ Sexual Orientation

12) ☐ Status as a Parent

**Waiver of Anonymity:**

An EEO Counselor cannot reveal the identity of a person who has come for counseling, except when authorized to do so by the person counseled.
**Are you willing to have your name revealed during the counseling stage?**

Yes ✓ No ____

If answer is "Yes," you must give permission by signing your name in the space following:

_[signature]_

---

On the same matter have you:

Filed a grievance under a negotiated grievance procedure?    ___Yes ✓No

On the same matter have you:

Filed a grievance under the Agency grievance system?    ___Yes ✓No

On the same matter have you:

Appealed to the Merit Systems Protection Board?    ___Yes ✓No
If yes, what is its status?

---

**Do you have a representative?** ___ Yes ✓No

Representative's Name:

Telephone number:

Fax number:

Address:

Note: You may designate a representative at any time during the EEO process by completing a written designation of representative.

_[signature]_                                     06-01-04
**Signature of Aggrieved Party**                  **Date**

_[signature]_                                     6-1-04
**Signature of Counselor**                        **Date**

12/2003